IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Patsine Blount-Ferguson, | ) | Civil Action No.: 4:13-cv-1951-RBH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| Agape Community Hospice of the | ) | |
| Pee Dee, Inc., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Plaintiff Patsine Blount-Ferguson ("Plaintiff") filed this action on July 16, 2013 seeking recovery against her former employer, Defendant Agape Community Hospice of the Pee Dee, Inc. ("Defendant" or "Agape"). *See* Compl., ECF No. 1. In the Complaint, Plaintiff alleges that Defendant discriminated against her because of her race in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000(e), *et. seq. See id.* at ¶¶ 15–16. She also alleges that Defendant retaliated against her as a result of her complaints to that end. *See id.*

On May 8, 2014, Defendant filed a motion summary judgment. *See* Def.'s Mot., ECF No. 31. Plaintiff timely filed a response in opposition to this motion on May 28, 2014, *see* Pl.'s Resp., ECF No. 37, and Defendant filed a reply in support of its motion on June 9, 2014, *see* Def.'s Reply, ECF No. 40. The matter is now before the Court after the issuance of the Report and Recommendation ("R & R") of United States Magistrate Thomas E. Rogers, III.[1] *See* R & R, ECF No. 51. In the R & R, the Magistrate Judge recommends that the Court deny Defendant's motion for summary judgment. *See id.* at 11.

---

[1] In accordance with 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02 (D.S.C.), this matter was referred to the Magistrate Judge for pretrial handling.

For the reasons stated below, the Court adopts the Magistrate Judge's R & R and denies Defendant's motion for summary judgment.

## STANDARD OF REVIEW

The Magistrate Judge makes only a recommendation to the district court. The recommendation has no presumptive weight. The responsibility to make a final determination remains with the district court. *Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). The district court is charged with making a *de novo* determination of those portions of the Report to which specific objection is made, and the court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

The district court is obligated to conduct a *de novo* review of every portion of the Magistrate Judge's report to which objections have been filed. *Id.* However, the court need not conduct a *de novo* review when a party makes only "general and conclusory objections that do not direct the [C]ourt to a specific error in the [M]agistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). The Court reviews only for clear error in the absence of a specific objection. *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005).

## SUMMARY JUDGMENT STANDARD

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the burden of proving that summary judgment is

2

appropriate.   Once the moving party makes the showing, however, the opposing party must respond to the motion with "specific facts showing there is a genuine issue for trial."   Fed. R. Civ. P. 56(e).

When no genuine issue of any material fact exists, summary judgment is appropriate.   *Shealy v. Winston*, 929 F.2d 1009, 1011 (4th Cir. 1991).   The facts and inferences to be drawn from the evidence must be viewed in the light most favorable to the non-moving party.   *Id.*   However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."   *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986)).

In this case, Defendant "bears the initial burden of pointing to the absence of a genuine issue of material fact."   *Temkin v. Frederick Cnty. Comm'rs*, 845 F.2d 716, 718 (4th Cir. 1991) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).   If Defendant carries this burden, "the burden then shifts to the non-moving party to come forward with fact sufficient to create a triable issue of fact."   *Id.* at 718–19 (citing *Anderson*, 477 U.S. at 247–48).

"Once the moving party has met its burden, the nonmoving party must come forward with some evidence beyond the mere allegations contained in the pleadings to show there is a genuine issue for trial."   *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 874–75 (4th Cir. 1992).   The nonmoving party may not rely on beliefs, conjecture, speculation, of conclusory allegations to defeat a motion for summary judgment.   *See id*; *Doyle v. Sentry, Inc.*, 877 F. Supp. 1002, 1005 (E.D. Va. 1995).   Rather, the nonmoving party is required to submit evidence of specific facts by way of affidavits, depositions, interrogatories, or admissions to demonstrate the existence of a genuine and material factual issue for trial.   *See* Fed. R. Civ. P. 56(c), (e); *Baber*, 977 F.2d at 875 (citing *Celotex*, 477 U.S. at 324)).   Moreover, the nonmovant's proof must meet "the substantive evidentiary

3

standard of proof that would apply at a trial on the merits." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993); *DeLeon v. St. Joseph Hosp., Inc.*, 871 F.2d 1229, 1223 n.7 (4th Cir. 1989). In discrimination cases, a party is entitled to summary judgment if no reasonable jury could rule in the non-moving party's favor. *See Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002).

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

The facts of this case, including citations to the record, were completely and accurately set forth in the Magistrate Judge's Report and Recommendation. *See* ECF No. 51 at 1–4. Briefly stated, Plaintiff was employed by Agape from May 6, 2008 to May 16, 2012 as a Certified Nursing Assistant ("CNA"). *See* Agape Statement, ECF No. 37-4 at 3. During the course of her employment, Plaintiff alleges that she was treated differently on the basis of race in the terms, privileges and conditions of her employment. *See* ECF No. 1 at ¶ 7. She asserts that she was punished for patient complaints about here while other, Caucasian employees were not, and that she was terminated for failure to provide good customer service while other, Caucasian employees were not. *See id.* She also alleges that she was part of a pattern and practice of discriminatory discharge by Defendant. *See id.* Finally, Plaintiff alleges that she complained about her treatment and attempted to grieve Defendant's termination decision, but was not successful. *See id.* at ¶ 8. Defendant denies that it discriminated against Plaintiff or retaliated against her. *See* Answer, ECF No. 5 at ¶¶ 8, 10.

**DISCUSSION**

**I.      R & R and Objections**

In the R & R, the Magistrate Judge first notes that a Plaintiff may proceed through two avenues of proof for a race discrimination claim: (1) by either presenting direct or circumstantial proof that race was a motivating recommends that Defendant's Motion for Summary Judgment be denied or (2) proceeding under the burden shifting framework established in *McDonnell Douglass Corp. v. Green*, 411 U.S. 792 (1973).  *See* ECF No. 51 at 6.  The Magistrate Judge noted that Defendant argues Plaintiff failed to establish a *prima facie* case of race discrimination.   However, the Magistrate Judge found that Plaintiff properly satisfied each of the elements of a *prima facie* case. *See id.* at 7–9.  The Magistrate Judge then explained that, while Defendant provided a legitimate, non-discriminatory reason for Plaintiff's termination, the evidence in the record is conflicting and thus an issue of fact exists as to whether the reasons given for Plaintiff's discipline were pretext for discrimination.  *See id.* at 9–11.

Defendant timely filed objections to the R & R.  *See* Def.'s's Objs., ECF No. 55.  In its objections, Defendant first argues that the Magistrate Judge erroneously found that Plaintiff was treated differently than a similarly situated employee, Ms. Starr Harris ("Harris").  *See id.* at 4. Defendant asserts that Plaintiff failed to show that the purported "similarly situated" employee was sufficiently similar, as she did not establish that this employee was of another race, and this employee only had one complaint lodged against her compared to multiple for Plaintiff.  *See id.* at 5. Moreover, Defendant argues that the Magistrate Judge glossed over the fact that Plaintiff was terminated not only because of the patient complaints but also because she purportedly falsified her time sheet.  *See id.* at 6.  Defendant then argues that the Magistrate Judge erred in failing to cite to

5

the record to support his conclusion that the similarly situated employee was treated differently because she was allowed to be heard before being "written up," whereas Plaintiff was not.  *See id.*

Defendant's second and final objection asserts that the Magistrate Judge improperly found that Plaintiff met her burden of showing that Defendant's legitimate reasons for her termination were pretext.  *See id.* at 6–8.  Defendant notes that the R & R exclusively addressed the patient complaints and ignores the fact that Defendant produced an independent reason for Plaintiff's termination (*i.e.* the falsification of time sheets).  *See id.* at 7.  Defendant claims that the R & R does not rely on any evidence regarding the actual decision to terminate Plaintiff but rather cites to testimony of two former employees who played no role.  *See id.* at 7–8.

Plaintiff timely replied to Defendant's objections.  *See* Pl.'s Reply, ECF No. 57.  Plaintiff first asserts that she has sufficiently shown that Harris was similarly situated.  *See id.* at 3.  She argues that Defendant cannot deny that Harris is Caucasian.  *See id.*  Moreover, Plaintiff contends that Harris's conduct was of comparable seriousness to that of Plaintiff's, and reiterates that the offenses need not be identical.  *See id.*  Plaintiff then notes Defendant cannot argue that the number of complaints was the reason for the difference in discipline, as Defendant has failed to even establish what motivated Plaintiff's termination, and has yet to establish the actual decision maker for Plaintiff's termination.  *See id.* at 4.  Plaintiff also asserts that she was performing her job duties at a satisfactory level, as both of the alleged decision makers testified that they were satisfied with her. *See id.* at 5.  Plaintiff then argues that Defendant's claim about the falsification of time sheets has not been proven and is only supported by an allegation contained in internal investigation notes.  *See id.*

Plaintiff also contends that she has sufficiently established a question of fact as to pretext. *See id.* at 6.  She argues that Defendant's claim that the R & R does not rely on any evidence relating

to the actual decision at Agape to terminate Plaintiff is disingenuous, as both of the individuals who allegedly made the decision to terminate Plaintiff deny making that decision. *See id.* at 6–7. Moreover, Plaintiff reiterates that in the pretext context, Defendant has failed to provide any evidence that Plaintiff falsified her timesheet. *See id.* at 8.

## II.    Relevant Law

Defendant's motion analyzed Plaintiff's disparate treatment claim under the *McDonnell Douglas* framework, as did Plaintiff's response in opposition. Accordingly, the Court finds that Plaintiff is proceeding under the *McDonnell Douglas* burden-shifting framework. *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 318 (4th Cir. 2005); *see also Love-Lane v. Martin*, 355 F.3d 766, 786 (4th Cir. 2004) ("[T]he *McDonnell Douglas* framework, developed for Title VII, has been used to evaluate race discrimination claims . . . .").

Pursuant to this framework, the burden is initially on the plaintiff to establish a *prima facie* case of a violation of Title VII. If the plaintiff successfully establishes a *prima facie* case, the burden shifts to the defendant to produce evidence of a legitimate, nondiscriminatory reason for its employment action. *Merritt v. Old Dominion Freight Line, Inc.*, 601 F.3d 289, 294 (4th Cir. 2010). If the defendant meets the burden to demonstrate a legitimate, nondiscriminatory reason for its employment action, the burden shifts back to the plaintiff to demonstrate by a preponderance of the evidence "that the neutral reasons offered by the employer 'were not its true reasons, but were a pretext for discrimination.'" *Id.* (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

### III.    Whether Plaintiff Established a *Prima Facie* Case

"In general terms, a plaintiff establishes a *prima facie* case by proving a set of facts which would enable the fact-finder to conclude, in the absence of any further explanation, that it is more likely than not that the adverse employment action was the product of discrimination." *Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 58 (4th Cir. 1995). More specifically, for race discrimination claims the Fourth Circuit has explained that a Plaintiff must demonstrate that: (1) she was a member of a protected class; (2) she suffered an adverse employment action; (3) at the time of the adverse action she was performing up to her employer's expectations; and (4) the circumstances gave rise to an inference of unlawful discrimination. *Adams v. Trs. of the Univ. of N.C.-Wilmington*, 640 F.3d 550, 558 (4th Cir. 2011). The Fourth Circuit has alternately stated the fourth element as "similarly-situated employees outside the protected class received more favorable treatment." *Young v. United Parcel Serv., Inc.*, 707 F.3d 437, 449–50 (4th Cir. 2013) (quoting *Gerner v. Cnty. of Chesterfield*, 674 F.3d 264, 266 (4th Cir. 2012)). Ultimately, however, the exact standard is flexible depending on the facts and claims alleged. *See Ennis*, 53 F.3d at 59 ("Although we accept the McDonnell Douglas framework as a useful tool, it should not be applied in a 'rigid, mechanized, or ritualistic' manner." (citations omitted)).

The Magistrate Judge noted that it is undisputed that Plaintiff is a member of a protected class and that she suffered adverse employment action. The Magistrate Judge then found that Plaintiff was meeting Defendant's legitimate expectations at the time of her termination. Defendant has not objected to any of these conclusions regarding the first three elements and, finding no clear error, the Court adopts the Magistrate Judge's analysis as its own.

8

Defendant does, however, object to the Magistrate Judge's determination that similarly situated employees outside the protected class received more favorable treatment.  In particular, Defendant takes issue with the Magistrate Judge's finding that Starr Harris ("Harris") was similarly situated and that she received more favorable treatment.  In finding she was similarly situated, the Magistrate Judge pointed out that Harris was another CNA who also received a complaint against her. *See* Harris Dep., ECF No. 37-6 at 6:13–17, 13:1–7, 18:7–19, 20:1–20.  Harris went to the patient's house to speak with a patient's daughter, who asked Harris to leave.  *See id.* at 12:20–13:10.  The patient's daughter then called Amanda Isgett ("Isgett"), the Patient Care Coordinator and Plaintiff's supervisor, to complain.  *See id.* at 13:1–10.  Isgett called Harris into her office to discuss this incident, but gave her the opportunity to explain the situation.  *See id.* at 12:3–16.  Isgett did not complete a corrective action form because Harris explained to her that it was a misunderstanding. *See id.* at 12:3–16.  Similarly, Plaintiff also received a complaint, although it was from a previously assigned patient rather than a patient's family member.  *See* First Corrective Action Form, ECF No. 31-2 at 2.  This patient asserted that Plaintiff told him to call and "make a stink" so the patient could keep her as a caregiver after the CNAs were reassigned.  *See id.*  Plaintiff was issued a corrective action form by Isgett and placed on probation for 60 days because of this incident.  *See id.*  Unlike Harris, however, Plaintiff was later issued a second corrective action form which indicated that she was being terminated for continuous patient complaints and falsification of time sheets.

Defendant asserts that Plaintiff has not shown that Harris is from a race outside of Plaintiff's protected class (*i.e.* African American).  However, as Plaintiff correctly noted, Defendant had not contested Harris's race prior to the Magistrate Judge issuing his R & R.  In its reply to Plaintiff's response in opposition to summary judgment—which had argued that Harris was a similarly situated

Caucasian employee—Defendant merely noted that Plaintiff had not provided any evidence of any Caucasian employees who filed false time sheets.   *See* ECF No. 40 at 4.   Accordingly, Defendant implicitly acknowledged Plaintiff was correct in asserting that Harris was a Caucasian employee who received a patient complaint.   In any event, as Plaintiff correctly noted in her reply to Defendant's objections, Defendant has not attempted to actually deny that Harris is Caucasian or provide any evidence to that end.   Accordingly, the Court finds that point to be without merit for purposes of this summary judgment motion.   If such is actually the case, Defendant may raise it at trial.

Defendant also argues, however, that Harris's situation is different from Plaintiff's because Plaintiff received multiple complaints, whereas Harris only received one.   As Plaintiff noted in her reply to the objections, however, even though Harris was not accused of falsifying her time sheets, Plaintiff could still show that she was treated more favorably than Plaintiff with regard to the initial patient complaint, as Plaintiff has asserted a disparate discipline claim.   The record evidence is conflicting as to the number of complaints Plaintiff actually received prior to receiving the first corrective action.   For example, Defendant provided internal investigation notes which generally asserted that Plaintiff received "several complaints which lead to a 60 day probation period." Investigative Notes, ECF No. 31-3 at 2.   However, the first corrective action only discusses the complaint from Plaintiff's patient who said she told him to call and "make a stink."   *See* ECF No. 31-2.   As Plaintiff noted, however, Isgett stated in her deposition that she did not remember patient complaints against Plaintiff being "continuous" or "several."   *See id.* at 20:9–23.   Moreover, John Griggs, Executive Director for Agape's Florence and Darlington Offices, averred that he typically received all complaints through the chain of command.   *See* Griggs Aff., ECF No. 37-5 at ¶ 7.   With regard to Plaintiff, he noted that "Patsine Blount Ferguson was a satisfactory employee and I had no

disciplinary issues with her prior to termination." *See id.* at ¶ 7. He also noted that he never received any direct complaints from patients regarding Plaintiff, but did receive "numerous compliments and accolades." *See id.* at ¶ 8. Based on this conflicting evidence, there is a question of fact as to whether Plaintiff and Ms. Harris received a comparable number of complaints.

Defendant also argues, however, that the context of each complaint was different. Defendant asserts that, for Harris, a family member of an Alzheimer's patient—who did not really know what was going on and confused Harris with another CNA—complained. Plaintiff, on the other hand, purposefully told the patient to call and complain to Agape about the reassignment of CNAs, and the patient himself complained. Defendant is correct in asserting that the nature of the complaints was not identical. However, as the Magistrate Judge correctly explained, exact similarity is not necessary. *See Cook v. CSX Transp. Corp.*, 988 F.2d 507, 511 (4th Cir. 1993); *see also Moore v. City of Charlotte*, 754 F.2d 1100, 1107 (4th Cir. 1985) (stating that "'precise equivalence in culpability between employees is not the ultimate question'" (quoting *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273(1976))). Instead, "[t]he similarity between comparators and the seriousness of their respective offenses must be clearly established in order to be meaningful." *Lightner v. City of Wilmington*, 545 F.3d 260, 265 (4th Cir. 2008).

The Court agrees with the Magistrate Judge that the evidence is sufficient to create a question of fact with respect to whether Defendant treated similarly situated employees differently. Plaintiff and Harris's situations were not exactly alike. However, both received a complaint by a patient or family member regarding behavior that was not particularly egregious. For Harris, Defendant allowed her to explain the situation without receiving a corrective action form. Plaintiff, however, was punished with a sixty day probation period and issued a corrective action form. Ultimately,

11

Defendant relied in part on this complaint in terminating Plaintiff as well. Accordingly, the Court finds that there is a question of fact regarding whether Harris was treated more favorably than Plaintiff.

The Court agrees with Defendant that the Magistrate Judge did not really discuss the fact that Plaintiff has provided no evidence of any similarly situated employees who were accused of falsifying time sheets, or who were terminated because of multiple patient complaints. Plaintiff specifically admitted her deposition that she was not aware of any Caucasian employees who filed false time sheets. *See* Pl. Dep., ECF No. 31-1 at 62:1–4. Moreover, there is evidence in the record that Agape had indeed received multiple patient complaints against Plaintiff at the time of *termination* (as opposed to the time of the first corrective action discussed above). *See* ECF No. 31-2; ECF 31-3; ECF No. 31-4 (discussing the initial complaint as well as the complaint of a Ms. McInnis). Plaintiff has not presented any evidence of other employees who were retained after receiving multiple complaints. Accordingly, it appears to be undisputed that Plaintiff has not presented any evidence that employees outside the protected class who allegedly falsified time sheets or received multiple employee complaints received more favorable treatment. Nevertheless, the Court notes that the ultimate avenue of proof of the fourth element is not necessarily through showing similarly situated employees received more favorable treatment (as Plaintiff did with regard to the initial punishment). Rather, the inquiry is whether the circumstances give rise to an inference of unlawful discrimination. The Court agrees with the Magistrate Judge that the conflicting evidence and amorphous reasons for Plaintiff's termination, described in more detail below, sufficiently establish a question of fact with regard to this inference. *See Burdine*, 450 U.S. at 253 ("The burden of establishing a prima facie case of disparate treatment is not onerous.").

12

Accordingly, the Court agrees with the Magistrate Judge that Plaintiff has met her burden for establishing a *prima facie* case of race discrimination.

## IV.     Pretext

The Magistrate Judge then found that Defendant met its burden of demonstrating a legitimate, nondiscriminatory reason for its employment action.[2]  No party objected to this recommendation and, finding no clear error, the Court agrees with the Magistrate Judge that Defendant sufficiently met its burden.

Once defendant meets its burden, the burden shifts back to the plaintiff to demonstrate by a preponderance of the evidence "that the neutral reasons offered by the employer 'were not its true reasons, but were a pretext for discrimination.'"  *See Merritt v. Old Dominion Freight Line, Inc.*, 601 F.3d 289, 294 (4th Cir. 2010) (quoting *Burdine*, 450 U.S. at 253).   In order to show pretext, Plaintiff can meet her burden by showing that Defendant's explanation is "'unworthy of credence' or by offering other forms of circumstantial evidence sufficiently probative of . . . discrimination." *Mereish v. Walker*, 359 F.3d 330, 336 (4th Cir. 2004) (citations omitted); *see also Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 147 (2000) ("Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive.").  Moreover, "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated."  *Reeves*, 530 U.S. at 148.

---

[2] As previously noted, the reasons given by Defendant were patient complaints and falsification of time sheets.

13

Defendant asserts that Plaintiff has failed to meet her burden of showing, by a preponderance of the evidence, that its legitimate, nondiscriminatory reasons for disciplining, and ultimately terminating, Plaintiff were merely pretexts of discrimination. In particular, Defendant notes that it has presented two reasons for Plaintiff's termination: (1) patient complaints and (2) falsification of time sheets. Defendant argues that the R & R only addressed the "patient complaints" portion of its rationale and not the falsification of time sheets. Moreover, Defendant asserts that the R & R fails to rely on any evidence relating to the actual decision to terminate Plaintiff. Finally, Defendant contends that Plaintiff's failure to show who made the allegedly pretextual decision to terminate her demonstrates her inability to meet her burden of proof.

After reviewing the record *de novo*, the Court also adopts the Magistrate Judge's analysis on pretext as its own. Defendant's argument regarding the Magistrate Judge and Plaintiff's failure to point to the person at Agape who allegedly made the pretextual decision to terminate Plaintiff is somewhat disingenuous. Defendant itself affirmatively stated that Griggs and Isgett made the discharge decision. *See* ECF No. 37-4 at 3. Relying on this information, Plaintiff deposed Isgett and obtained an affidavit from Griggs. Both of these employees deny making the decision to terminate Plaintiff. As Plaintiff noted, Isgett stated in her deposition that Plaintiff went "above and beyond" for her patients and that she did not agree with her termination. *See* Isgett Dep., ECF No. 37-3 at 16:12–17:9. She explained that the only reason she could remember for Plaintiff's termination was customer complaints, but does not remember complaints being "continuous" or "several." *See id.* at 20:9–23. Isgett testified that termination of Plaintiff was not her decision to make and she did not agree with the decision to terminate Plaintiff. *See* ECF No. 37-3 at 16:12–17:9. Moreover Griggs averred that he typically received all complaints through the chain of command.

14

*See* ECF No. 37-5 at ¶ 7.  With regard to Plaintiff, he noted that "Patsine Blount Ferguson was a satisfactory employee and I had no disciplinary issues with her prior to termination."  *See id.* at ¶ 7. He also noted that he never received any direct complaints from patients regarding Plaintiff, but did receive "numerous compliments and accolades."  *See id.* at ¶ 8.  Furthermore, Griggs averred that he did not make the decision to terminate Plaintiff either, and that he was never asked his opinion on the matter.  *See* ECF No. 37-5 at ¶ 7.  He noted that he felt the termination was unfortunate and he was "appalled" that Plaintiff was terminated.  *Id.* at ¶ 11.  Accordingly, there is a clear conflict of evidence in the record caused by Defendant's own statement that Griggs and Isgett made the decision.

Moreover, with regard to the falsification of the time sheet, there is also conflicting evidence in the record.   The second corrective action form notes that Plaintiff was terminated in part for false verification of time sheets.  *See* ECF No. 31-4 at 2.  Moreover, Agape's investigation notes stated that "Patsine was putting 1 hour down but only staying 15–20 minutes" on her timesheet, and that "[a] nurse went to make her weekly meeting during the time Patsine should have been present but not there."  *See* ECF No. 31-3 at 2.  As Defendant notes, Plaintiff did agree in her deposition that falsification of time sheets would constitute grounds for immediate dismissal.  *See* ECF No. 31-1 at 21:10–17.  However, at no point in the any of the deposition excerpts in the record did she agree that she actually falsified any time sheets.  Moreover, again, Isgett and Grigg's testimony contradicts the time sheet allegation.  Isgett specifically testified that, despite false verification of time sheets being listed as a reasons for Plaintiff's termination on the corrective action form, the only reason she recalled for termination of Plaintiff was "the customer complaints."  *See* ECF No. 37-3 at 20:9–16; 34:2–35:1.  When pressed further, she again reiterated she did not remember "any details about the false verification of time sheets."  *See id.* at 17–19.  Moreover, Griggs averred that any complaints

about employees would be communicated to him through the chain of command, but he did not have any disciplinary issues with Plaintiff prior to her termination. *See* ECF No. 37-5 at ¶ 7. Accordingly, the Court agrees with the Magistrate Judge that there is a question of fact with regard to whether Defendant's rationale is unworthy of credence based on the conflicting evidence.

The Court agrees with the R & R that the conflicting evidence in the record, in addition to the evidence of potential disparate treatment between Plaintiff and a Caucasian coworker, is sufficient to create an issue of fact as to whether Defendant's reasons for terminating Plaintiff were pretext for discrimination. Accordingly, summary judgment is inappropriate on Plaintiff's race discrimination claim.

## V.       Retaliation

As the Magistrate Judge noted in his R & R, Plaintiff also asserts a claim for retaliation, for which Defendant has not moved for summary judgment. Thus, the Magistrate Judge also recommended that the case proceed on this claim as well. Defendant did not object to this recommendation. Accordingly, finding no clear error, the Court agrees with the Magistrate Judge that this claim remains as well.

### CONCLUSION

The Court has thoroughly reviewed the entire record, including Defendant's Motion for Summary Judgment, Plaintiff's Response in Opposition, Defendant's Reply to Plaintiff's Response, the R & R, Defendant's objections to the R & R, Plaintiff's Reply to Defendant's Objections and applicable law. For the reasons stated above and by the Magistrate Judge, the Court hereby overrules Defendant's objections and adopts the Magistrate Judge's R & R.

16

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment is **DENIED**.

The remaining deadlines in the scheduling order were stayed pending the Court's ruling on Defendant's motion. *See* Order, ECF No. 43. In light of the Court's ruling denying Defendant's motion, the stay is lifted and the parties should proceed under the following schedule:

1. No later than **March 19, 2015**, the parties shall file and exchange Fed. R. Civ. P. 26(a)(3) pretrial disclosures. Within fourteen (14) days thereafter, a party shall file and exchange Fed. R. Civ. P. 26(a)(3) objections, any objections to use of a deposition designated by another party and any deposition counter-designations under Fed. R. Civ. P. 32(a)(6). *See* Local Civil Rule 30.03(J) (video deposition additional requirements).

2. Motions in limine must be filed at least three weeks prior to **April 30, 2015**. Responses to motions in limine shall be filed within seven (7) days after the motion is filed.

3. Parties shall furnish the Court pretrial briefs seven (7) days prior to the date set for jury selection (Local Civil Rule 26.05).[3] Attorneys shall meet at least seven (7) days prior to the date set for submission of pretrial briefs for the purpose of exchanging and marking all exhibits. *See* Local Civil Rule 26.07. (Attorneys are reminded to view the Court's instructions online regarding verdict forms, jury instructions, deposition designations, etc. that may be applicable to their case.)

4. This case is subject to being called for jury selection and/or trial on or after **April 30, 2015**.

**IT IS SO ORDERED.**

          s/ R. Bryan Harwell
          R. Bryan Harwell
          United States District Judge

Florence, South Carolina
February 26, 2015

---

3 Judge Harwell requires that pretrial brief information found in LCR 26.05 (A)–(M) be submitted only to the Judge's chambers; however, pretrial brief information contained in LCR 26.05 (N)–(O) shall be served on opposing parties.